1997 ND 224

**John H. KRABSETH, Petitioner and Appellee,**

v.

**Marshall MOORE, Director, North Dakota Department of Transportation, Respondent and Appellant.**

Civil No. 970226.

Supreme Court of North Dakota.

Dec. 2, 1997.

Lawrence E. King, of Zuger Kirmis & Smith, Bismarck, for petitioner and appellee.

Andrew Moraghan, Assistant Attorney General, Attorney General's Office, Bismarck, for respondent and appellant.

MARING, Justice.

[¶ 1] The North Dakota Department of Transportation appealed from a district court writ of mandamus directing the Department to suspend John H. Krabseth's driving privileges for 91 days in lieu of a one-year revocation of those privileges. We hold the district court abused its discretion in issuing the writ, and we reverse.

[¶ 2] On October 29, 1996 Highway Patrol Officer Dean Franchuk arrested Krabseth for DUI in violation of Section 39–08–01, N.D.C.C. When Krabseth refused to submit to a chemical blood test, Franchuk issued Krabseth a temporary operator's permit and Report and Notice, pursuant to Chapter 39–20, N.D.C.C. The notice informed Krabseth his driving privileges would be revoked for one year for his refusal to submit to a chemical test, unless he either requested a hearing, as authorized under Section 39–20–05, N.D.C.C., or he pleaded guilty to the criminal charge and filed an affidavit with the Department within 25 days, as required by Section 39–20–04(2), N.D.C.C. Krabseth did not request a hearing. Instead, he pleaded guilty to the DUI charge on November 6, 1996, but he did not file an affidavit with the Department within 25 days.

[¶ 3] Section 39–06.1–10(7), N.D.C.C., imposes a 91–day administrative suspension for a first violation of Section 39–08–01, N.D.C.C. On December 23, 1996, the Department notified Krabseth that, pending a request by him for a hearing, his driving privileges would be administratively suspended for his DUI conviction. Krabseth responded by letter, dated December 23, 1996, requesting an administrative hearing if his understanding that his license would be suspended for 91 days, rather than one year, was mistaken. The Department wrote to Krabseth on December 30, 1996, clarifying that his driving privileges were being revoked for one year under Section 39–20–04(1), N.D.C.C., for his refusal to take the blood test requested by the highway patrol officer.

[¶ 4] Following an administrative hearing on February 18, 1997, the hearing officer recommended the Department issue a 91–day suspension of Krabseth's license instead of a one-year revocation. The Department requested reconsideration of the recommendation. Following a second hearing on April 4, 1997, the hearing officer again recommended a 91–day suspension. The Department rejected the hearing officer's recommendation, concluding it had no authority to issue a 91–day suspension rather than a one-year revocation. Krabseth petitioned for a writ of mandamus with the district court.

Following a hearing, the court granted Krabseth's petition, issuing a writ of mandamus directing the Department to substitute a 91–day suspension in lieu of the one-year revocation of Krabseth's driver's license. The Department appealed.

[¶ 5] The Department asserts it has no authority to suspend Krabseth's license for 91 days instead of revoking his license for one year, as required by Section 39–20–04(1), N.D.C.C., and, consequently, the trial court abused its discretion in issuing the writ of mandamus.

[¶ 6] Section 32–34–01, N.D.C.C., governs the issuance of writs of mandamus:

> *32–34–01. By and to whom writ of mandamus issued.* The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is precluded unlawfully by such inferior tribunal, corporation, board, or person.

A party seeking a writ of mandamus bears the burden of demonstrating a clear legal right to the performance of the particular acts sought to be compelled by the writ. *North Dakota Council of School Adm'rs v. Sinner*, 458 N.W.2d 280, 283 (N.D.1990). A writ of mandamus will not lie unless the petitioner's legal right to the performance of the particular acts sought to be compelled is clear and complete. *Adams County Record v. GNDA*, 529 N.W.2d 830, 836 (N.D.1995). Issuance of the writ is left to the sound discretion of the trial court. *Sinner*, 458 N.W.2d at 284. This court will not reverse a trial court's issuance of a writ of mandamus unless, as a matter of law, the writ should not issue or the trial court abused its discretion. *Mini Mart, Inc. v. City of Minot*, 347 N.W.2d 131, 135 (N.D.1984). The trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Opdahl v. Zeeland Pub. School Dist. No. 4*, 512 N.W.2d 444, 446 (N.D.1994).

[¶ 7] The operator of a motor vehicle on a highway in this state is deemed to have consented to a chemical test to determine the alcohol content of his blood if arrested for driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor. Section 39–20–01, N.D.C.C. A driver may refuse to submit to chemical testing, but with consequences set forth under Subsection 39–20–04(1), N.D.C.C.:

> If a person refuses to submit to testing under section 39–20–01 or 39–20–14, none may be given, but the law enforcement officer shall immediately take possession of the person's operator's license if it is then available and shall immediately issue to that person a temporary operator's permit.... The temporary operator's permit serves as the commissioner's official notification to the person of the commissioner's intent to revoke driving privileges in this state and of the hearing procedures under this chapter. The commissioner, ... shall revoke that person's license or permit to drive ... subject to the opportunity for a prerevocation hearing and post-revocation review as provided in this chapter.... The period of revocation or denial of issuance of a license or permit under this section is:
>
> a. One year if the person's driving record shows that within the five years preceding the most recent violation of this section, the person's operator's license has not previously been suspended, revoked, or issuance denied for a violation of this chapter or section 39–08–01 or equivalent ordinance.

■ [¶ 8] Administrative suspension of a driver's license under Section 39–06.1–10, N.D.C.C., resulting from a criminal conviction of DUI, does not preclude administrative revocation of the person's license under Section 39–20–04(1), N.D.C.C., for refusing a chemical test. *Fetzer v. Director, Dep't of Transp.*, 474 N.W.2d 71, 72 (N.D.1991).

■ [¶ 9] Under Subsection 39–20–04(2), N.D.C.C., revocation of driving privileges for failure to test can be avoided if all of the stated requirements are fulfilled:

2. A person's driving privileges are not subject to revocation under this section if all of the following criteria are met:

a. No administrative hearing is held under section 39–20–05;

b. The person mails an affidavit to the director within twenty-five days after the temporary operator's permit is issued. The affidavit must state that the person:

(1) Intends to voluntarily plead guilty to violating section 39–08–01 or equivalent ordinance within twenty-five days after the temporary operator's permit is issued;

(2) Agrees that the person's driving privileges must be suspended as provided under section 39–06.1–10;

(3) Acknowledges the right to a section 39–20–05 administrative hearing and section 39–20–06 judicial review and voluntarily and knowingly waives these rights; and

(4) Agrees that the person's driving privileges must be revoked as provided under this section without an administrative hearing or judicial review, if the person does not plead guilty within twenty-five days after the temporary operator's permit is issued, or the court does not accept the guilty plea, or the guilty plea is withdrawn.

c. The person pleads guilty to violating section 39–08–01 or equivalent ordinance within twenty-five days after the temporary operator's permit is issued;

d. The court accepts the person's guilty plea and a notice of that fact is mailed to the director within twenty-five days after the temporary operator's permit is issued; and

e. A copy of the final order or judgment of conviction evidencing the acceptance of the person's guilty plea is received by the director prior to the return or reinstatement of the person's driving privileges.

To avoid administrative revocation of driving privileges for refusing a test, the driver must plead guilty to criminal charges and file an

affidavit with the Department within 25 days after the officer issues a temporary operator's permit. *Fetzer*, 474 N.W.2d at 72.

[¶ 10] Krabseth concedes he did not file a timely affidavit with the Department. He asserts, however, that his guilty plea to the criminal charge and filing of an affidavit on February 19, 1997, after commencement of the first administrative hearing and approximately 113 days after the officer issued a temporary operator's permit, constitute substantial compliance with the statute. Krabseth also asserts the Department's actual knowledge of his guilty plea, upon receiving the court's notice of the plea, should be deemed an adequate substitution for the affidavit to preclude revocation of his license under Section 39–20–04, N.D.C.C.

[¶ 11] The Legislature has clearly and specifically set forth under Subsection 39–20–04(2), N.D.C.C., the requirements for avoiding revocation of driver's privileges for refusing to take a test. One of those requirements is the timely filing of an affidavit, which informs the Department not only that the person will plead guilty to criminal charges but also that he will accept, without hearing, suspension of driving privileges under Section 39–16.1–10, N.D.C.C., for the violation. Under Subsection 39–20–05(1), N.D.C.C., the Legislature has specifically set forth the consequence for failing to file a timely affidavit with the Department:

> Before issuing an order of suspension, revocation, or denial under section 39–20–04 or 39–20–04.1, the director shall afford that person an opportunity for a hearing if the person mails a request for the hearing to the director within ten days after the date of issuance of the temporary operator's permit.... *If* no hearing is requested within the time limits in this section, and *no affidavit is submitted within the time limits under subsection 2 of section 39–20–04, the expiration of the temporary operator's permit serves as the director's official notification to the person of the revocation,* suspension, or denial of driving privileges in this state. [Emphasis added]

Under this statute, failure to make a timely request for hearing or to timely file an affidavit with the Department results in an auto-matic revocation of the person's driver's privileges. Consequently, a driver who fails to file a timely affidavit has no clear legal right to avoid revocation of driving privileges for refusing a chemical test.

[¶ 12] *Lund v. North Dakota State Highway Dep't*, 403 N.W.2d 25, 27 (N.D.1987), provides instructive guidance for applying this statute. In *Lund*, a driver charged with DUI sought a writ of mandamus to require the State Highway Commissioner to grant him an administrative hearing under Section 39–20–05, N.D.C.C. At that time, the statutory period for filing a request for hearing was five days, but Lund did not mail his request for hearing until seven days after the arresting officer issued the temporary operator's permit. Lund asserted the Highway Commissioner should weigh the equities and grant him a hearing despite the fact his request for hearing was admittedly late. We rejected the contention and affirmed the trial court's refusal to grant a writ of mandamus:

> Requesting the Highway Commissioner to weigh equities and waive statutory time restrictions implies that the Commissioner had discretion as to whether or not to hold a hearing. If we were to assume, which we do not, that the Commissioner possessed such discretion, Lund nevertheless would not be entitled to the writ because mandamus is not proper to order a discretionary act.

*Lund*, 403 N.W.2d at 27.

[¶ 13] This case presents similar circumstances for applying the statute. To avoid revocation of driving privileges for refusing a test, a person must, under Subsection 39–20–04(2), N.D.C.C., file an affidavit within 25 days after issuance of the temporary operator's permit. If the person fails to file the affidavit within 25 days, Subsection 39–20–05(1), N.D.C.C., makes revocation automatic upon expiration of the temporary permit. Krabseth concedes he did not timely file the affidavit. Consequently, he had no legal right to avoid the one-year revocation, and, therefore, the trial court abused its discretion in granting the writ of mandamus.

[¶ 14] Krabseth relies on two cases, *Samdahl v. North Dakota Dep't of Transp. Di-*

*rector,* 518 N.W.2d 714 (N.D.1994) and *Schwind v. Director, Dep't of Transp.,* 462 N.W.2d 147 (N.D.1990), to support his assertion timely filing of the affidavit should not be considered a necessary prerequisite to avoiding the one-year revocation of his driving privileges for refusing a chemical test. Krabseth's reliance on these authorities is misplaced, because the rationale underlying them is clearly inapplicable to the circumstances here.

[¶ 15] Bradley Samdahl was arrested for DUI and submitted to a chemical test which showed he had an illegal concentration of alcohol in his blood. The analytical report was forwarded to the Department which, 36 days later, notified Samdahl his license was being administratively revoked for one year because he violated the DUI law. Samdahl appealed, claiming the Department was without jurisdiction to revoke his license because the arresting officer was required by statute to "immediately" issue a temporary operator's permit as notice of the Department's intent to suspend driving privileges, but the officer did not issue the temporary permit. This court held that although Samdahl did not "immediately" receive notice of suspension, the Department retained authority to suspend his license. We said:

> .... Although the unexplained delay of more than one month between the testing of the blood and the giving of notice of intention to suspend driving privileges does not strictly comply with "the letter of the law," we seek to avoid absurd results. It would be an absurd result if, in the absence of any showing of harm or prejudice to Samdahl, we were to hold the officer's failure to strictly comply with the statute resulted in Samdahl retaining his driving privileges.

*Samdahl,* 518 N.W.2d at 717.

[¶ 16] In circumstances similar to *Samdahl,* this court concluded in *Schwind,* an officer's failure to forward to the Department the operator's license of a DUI arrestee did not vitiate the Department's authority to hold a hearing and suspend the arrestee's driving privileges. This court reasoned:

> The clear legislative intent in enacting chapter 39–20, NDCC, was for the protec-

tion of the public, *i.e.,* to prevent individuals from driving while under the influence of intoxicants.... Section 39–20–03.1, NDCC, was enacted, in part, to help ensure that an individual who violated this chapter would not continue to drive. It would be an absurd result if we were to hold that an officer's failure to strictly comply with this portion of the statute had the opposite effect. While it is clear that section 39–20–03.1, NDCC, requires the officer to forward the operator's license, the failure to do so does not destroy the Director's jurisdiction to suspend a violator's driving privileges. A contrary holding would defeat the Legislature's intent to protect the public from potential hazards posed by intoxicated drivers.

*Schwind,* 462 N.W.2d at 150. We held in *Samdahl* and *Schwind* a minor variation in administrative procedure by a law enforcement officer, which does not prejudice a DUI arrestee, cannot defeat the Department's authority to suspend an arrestee's driving privileges. A contrary interpretation of the statutes would have defeated the Legislature's primary goal of protecting the public by preventing intoxicated persons from driving.

[¶ 17] The clear purpose of Chapter 39–20, N.D.C.C., is to eliminate drunken drivers from the highways by requiring drivers suspected of operating vehicles while under the influence of intoxicating liquor to submit to a chemical test to determine the alcohol content of their blood. *See Krehlik v. Moore,* 542 N.W.2d 443, 445 (N.D.1996). Allowing a driver to escape the consequences of refusing a chemical test is a matter of legislative grace. *State v. Murphy,* 527 N.W.2d 254, 256 (N.D.1995). Requiring strict compliance with the criteria for avoiding revocation effectuates the legislative intent of having DUI suspects submit to testing.

[¶ 18] Furthermore, unlike the circumstances in *Samdahl* and *Schwind,* where the Legislature provided no remedy for an officer failing to immediately issue a temporary operator's permit or to forward the driver's operating license to the Department, the Legislature has provided an express remedy under Section 39–20–05, N.D.C.C., for a driver's failure to timely file an affidavit. The

consequence is automatic revocation of driving privileges, and the Department has no discretion to alter it.

[¶ 19] A person attempting to avoid revocation of driving privileges for refusing to test must meet all requirements under Subsection 39–20–04(2), N.D.C.C., including the timely filing of an affidavit. The statute unambiguously requires it and thereby promotes the dual legislative purposes of keeping DUI violators off the roads and of having persons suspected of DUI violations submit to testing. This application of the statute is, in our view, wholly consistent with and directed by the rationale underlying *Samdahl* and *Schwind.*

[¶ 20] We hold the district court abused its discretion in issuing a writ of mandamus against the Department, because Krabseth had no clear legal right to substitute a 91–day license suspension in lieu of the Subsection 39–20–04(1), N.D.C.C., one-year revocation of his driving privileges. We reverse.

[¶ 21] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.